**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| VIKKI T. ORDOGNE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-1872 |
| § | |
| § | |
| AAA TEXAS, LLC, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Vikki Ordogne has sued her former employer, AAA Texas LLC, alleging violations of 42 U.S.C. § 1981. She alleges that AAA subjected her to a racially hostile work environment and retaliated against her by terminating her employment for complaining that a supervisor had discriminated against her. After discovery, AAA moved for summary judgment, asserting that the record shows that there was no racially hostile work environment as a matter of law and that Ordogne was discharged for forging a customer's name on an insurance application. (Docket Entry No. 24). This court granted summary judgment as to Ordogne's hostile work environment claim and denied it as to her retaliation claim. (Docket Entry No. 32). AAA has moved for reconsideration of this court's ruling. (Docket Entry No. 33). This court held oral argument on AAA's motion for reconsideration. Based on a careful consideration of the record, the motion and response, the arguments of counsel, and the applicable law, the motion for reconsideration is granted. Final judgment is entered by separate order. The reasons are explained in detail below.

**I.      Background**

The record evidence is described in this court's previous opinion. (Docket Entry No. 33). The facts relevant to AAA's reconsideration motion can be briefly summarized. Ordogne worked for AAA from April 25, 2005 to December 23, 2008 as a sales agent. From January 2008 to November 2008, Kerri Yu was Ordogne's supervisor. In October 2008, Ordogne complained to a human-resources representative, Stephanie Talley, that Yu had discriminated against her. In its reconsideration motion, AAA does not contest that this complaint was protected activity. Yu learned from her supervisor, Lisa Guertin, that Ordogne had lodged a complaint about her within two weeks of Ordogne's call to human resources. (Docket Entry No. 27, Ex B, Yu Depo., 78, 89–90). Ordogne's coworker, Kathy Wilson, testified that soon after Yu learned about Ordogne's complaint, Yu said that she "felt betrayed" and "wasn't happy" that Ordogne had spoken with human resources. (Docket Entry No. 27, Ex. C, Wilson Depo., 38).

The events leading to Ordogne's discharge began on December 3, 2008, when Wilson received a call from an AAA customer, Jeffrey Watson. Watson stated that he wanted to purchase a new renter's insurance policy. Wilson checked AAA's system and saw that Watson already had a renter's policy. Watson did not believe he had such a policy. (*Id.*, 101–02). Wilson talked to Yu, who instructed her to sell Watson a new policy and cancel the policy already on file. (*Id.*, 105). AAA's information system showed that Ordogne uploaded a renter's policy for Watson even though he had not paid the insurance premiums. Ordogne acknowledged that she had done so. (Docket Entry No. 27, Ex. A, Ordogne Depo., 127). Wilson and another coworker, Gian Besikcioglu, both stated that it was normal for sales agents to upload unpaid insurance policies and that Yu instructed sales agents to do so. (Docket Entry No. 27, Ex. C, Wilson Depo., 99; Ex. E, Besikcioglu Aff., ¶ 5).

Yu sent an email to Mark Ramsey, Ordogne's supervisor in her new office, and to Guertin.

The email stated that Ordogne had "bound" an application without taking money on the policy. (Docket Entry No. 27, Ex. B, Yu Depo., 88–89, Depo. Ex. 3). Yu testified that she thought she was obligated to inform Ramsey and Guertin. (Docket Entry No. 24, Ex. B, Yu Depo., 95–97). Yu acknowledged that she knew about Ordogne's complaint to human resources when she sent this email. (Docket Entry No. 27, Ex. B, Yu Depo., 1010–02).

Yu later obtained a copy of Watson's insurance application. (Docket Entry No. 27, Ex. C, Wilson Depo., 107). Wilson testified that when Yu obtained the copy, she said, "It's going to be payback. It is going to be hell to pay for Vikki going to HR and going over my head." (*Id.*, 69).[1] Yu did not believe that the signature on the rental insurance policy application was in fact Watson's. AAA's Texas policy on "Sales Related Employee Conduct That Can Result in Termination" states that if an AAA employee writes a customer's signature or initial on an insurance application, that is grounds for immediate termination. (Docket Entry No. 24, Ex. A, Ordogne Depo., 138). AAA's policy also states that an employee may be fired if the employee binds an "application without collection of monies due." (*Id.*). Yu asked Wilson to get a copy of Watson's driver's license, which Wilson did. The signature on the application and the signature on the driver's license did not appear to match. (*Id.*, 128). Watson denied having signed the application.

Yu provided Ramsey, Guertin, and Talley with copies of different documents bearing Watson's signature. (Docket Entry No.27, Ex B, Yu Depo.,106–08). Yu asserts that she had no additional involvement in any investigation or decision about Ordogne after providing these documents. (*Id.*). There is no evidence to the contrary. Ordogne acknowledges that after Yu sent

---

[1]  Wilson also testified that Yu said something like, "I'll teach her . . . payback . . . Boom. I got her . . . ." (Docket Entry No. 27, Ex. C, Wilson Depo., 107–08).

3

the email and the documents to Guertin and the others, Yu had no involvement in what Guerin and the others did with that information.

On December 19, 2008, Guertin met with Ordogne to interview her about Watson's policy. Guertin showed Ordogne an insurance policy Watson had later purchased and signed. Guertin also showed Ordogne the policy she had processed for Watson. Ordogne acknowledged that she had processed the policy but denied forging the signature on the application. She had no explanation for what she had done or why the signature did not match Watson's. Guertin suspended Ordogne for three days, telling her that she needed to leave the office while the investigation was conducted. On December 23, 2008, AAA fired Ordogne. (Docket Entry No. 27, Ex. A, Ordogne Depo., 142–45).

In its motion for reconsideration, AAA argues that even if Yu had a retaliatory animus in providing the allegedly forged documents to her supervisors, Ordogne has not demonstrated that she would not have been fired but for her complaint against Yu. AAA argues that *Staub* does not alter Fifth Circuit precedent holding that summary judgment is appropriate when the plaintiff fails to demonstrate a fact issue as to whether an employer would have terminated an employee even in the absence of any alleged retaliatory motive. AAA emphasizes that other than submitting the allegedly forged documents, Yu played no part in the decision to terminate Ordogne. Ordogne responds that Yu's retaliatory motive nonetheless demonstrates a fact issue. Ordogne emphasizes that Yu submitted the documents to her supervisors intending to get her fired. Ordogne also argues that a fact issue exists as to whether she forged the documents based on her testimony that she did not.

**II.     The Legal Standards**

    **A.     Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d

at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Retaliation

The same standard applies to retaliation under Title VII and § 1981. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Title VII makes it an unlawful employment practice for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). The elements of a *prima facie* showing of retaliation under Title VII are that the plaintiff: "(1) engaged in an activity protected by Title VII; (2) [she] was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate nonretaliatory reason for the employment action. *Davis*, 383 F.3d at 319. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* The standard of proof on the causation element of a Title VII claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct. *Septimus v. Univ. of Hou.*, 399 F.3d 601, 608 (5th Cir. 2005); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 329 (5th Cir. 2010) (holding that the Supreme Court's decision *Gross v. FBL Fin. Servs., Inc.*, ---- U.S. ----, 129 S. Ct. 2343 (2009) does not impact the Fifth Circuit's previous interpretations of Title VII). "[T]o survive summary judgment, [the] plaintiff must show 'a conflict in substantial evidence on the ultimate issue of

retaliation.'" *Gollas v. Univ. of Tex. Health Sci. Ctr. at Hous.*, No. 10-20365, 2011 WL 1834248, at *3 (5th Cir. May 12, 2011) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). "'Evidence is substantial if it is of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions.'" *Id.* (quoting *Sherrod*, 132 F.3d at 1122).

**III.    Analysis**

This court's previous opinion relied in part on the Supreme Court's decision in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011). *Staub* clarifies that an employer may be liable for retaliation even if there was no evidence of bias on the part of the final decisionmaker if that decisionmaker took into account a biased negative statement or evaluation about the plaintiff by someone not directly involved in the challenged employment decision. *Staub* arose under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 3411(a), a statute "very similar to Title VII" in prohibiting "adverse actions in which racial or sexual bias is a motivating factor." *Staub*, 131 S.Ct. at 1191 (comparing 38 U.S.C. § 4311(a) with 42 U.S.C. § 2000e-2(m)). The question in *Staub* was whether the employer could be liable when the manager responsible for the termination decision relied in part on a supervisor's animus-driven performance evaluation, even if that supervisor was not part of the termination decision. The Supreme Court rejected the Seventh Circuit's standard, which held that a " 'cat's paw' case could not succeed unless the nondecisionmaker exercised such 'singular influence' over the decisionmaker that the decision to terminate was the product of 'blind reliance.'" *Id.* at 1190 (quoting *Staub v. Proctor Hospital,* 560 F.3d 647, 659 (7th Cir. 2009)). The Court held that "if a supervisor performs an act motivated by [illegal] animus that is *intended* by the supervisor to cause an adverse employment action, and

7

if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Id.* at 1194 (emphasis in original). The Supreme Court rejected "a hard-and-fast rule" that an independent investigation by the decisionmaker breaks the causal link, explaining: "[I]f the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action (by the terms of USERRA it is the employer's burden to establish that), then the employer will not be liable. But the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* at 1193. *Staub* overturned the Fifth Circuit's legal standard for cat's paw liability to the extent that it dictated that an independent investigation automatically broke the causal chain, and to the extent that it required a showing that the decisionmaker "rubberstamped" the recommendation of the retaliatory actor.

After this court denied summary judgment on the retaliation claim and AAA moved for reconsideration, this court directed the parties to submit additional briefing specifically addressing the *Staub* cat's paw analysis with citations to the relevant parts of the record. With the benefit of the additional briefing and pinpoint citations, the relevant facts are both undisputed and clear. The record shows that Yu notified her supervisors at AAA of the potential problem involving Ordogne's processing of Watson's policy and provided documents showing that the signature on the policy did not match other examples of Watson's signature. The evidence clearly supported Ordogne's theory that Yu had been motivated by retaliatory animus when she sent the email and documents to her supervisors. But it is undisputed that at that point, Yu's involvement ended. It is undisputed that AAA conducted an independent investigation into whether Ordogne violated company policies in handling the Watson insurance policy. It is undisputed that Yu submitted no negative evaluation

8

or biased report that was part of the investigation. What Yu did was trigger an investigation into which she had no input. Ordogne has neither produced nor identified any evidence showing that the AAA managers who decided to fire Ordogne took Yu's report into account other than having it serve as the trigger for the investigation. There is undisputed evidence that the investigators determined that firing Ordogne was justified based on the results of their investigation, not on the report that caused it to occur. There is no evidence that any of the decision makers shared Yu's retaliatory animus toward Ordogne. The undisputed evidence shows that the independent investigation did not take Yu's report into account "without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Staub*, 131 S. Ct. at 1193. Unlike *Staub*, in which the decision maker relied on a biased report, there is no evidence that Yu's bias influenced the decision to terminate Ordogne. In a post-*Staub* decision, the Fifth Circuit reiterated that the plaintiff must demonstrate a fact issue as to whether retaliation was a but-for cause of an employer's decision to terminate an employee. *Gollas*, 2011 WL 1834248, at *3; *see also Ridley v. Harris County*, Civ. A. No. H–09–1867, 2011 WL 1485661, at *7 (S.D. Tex. Apr.19, 2011); *Palermo v. Clinton*, No. 08-CV-4623, 2011 WL 1261118, at *7 (N.D. Ill. Mar. 31, 2011); *Baldwin v. Holder*, Civ. A. No. H-09-842, 2011 WL 2078614, at *11 (S.D. Tex. May 26, 2011) (all applying *Staub* in the Title VII retaliation context). In the present case, there is no evidence that the decision to terminate Ordogne, a decision that Yu did not influence, in which the decisionmakers were not influenced by Yu's report other than to begin their independent investigation, and in which the decisionmakers justified their decision entirely apart from Yu's report, was the but-for result of Yu's retaliatory animus.

Even assuming a *prima facie* showing of retaliation, there is no fact issue as to pretext on this record. Ordogne argues that her testimony that she did not forge the documents demonstrates

9

pretext. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *see also Mire v. Texas Plumbing Supply Co., Inc.*, 286 F. App'x 138, 143–44 (5th Cir. 2008) (unpublished) (per curiam) (holding that the plaintiff's subjective belief that she was right and the defendant was wrong, without more, was insufficient to rebut defendant's reasons for the disciplinary action); *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (stating that the fact that an employer's investigation reaches the wrong conclusion does not show an improper motivation); *Cervantez v. KMGP Services Co. Inc.*, No. 08-11196, 349 F. App'x. 4, 10–11 (5th Cir. Sep. 16, 2009) (unpublished) (per curiam) ("[A] fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted in good faith."). Ordogne has not identified or produced evidence that the decision makers lacked a good-faith belief that she forged the documents and otherwise violated AAA policies in handling the Watson insurance policy. Ordogne's argument does not give rise to a fact issue that precludes summary judgment on reconsideration.

## III.    Conclusion

AAA's motion for reconsideration, (Docket Entry No. 33), is granted. AAA's motion for summary judgment, (Docket Entry No. 24), is also granted. Final judgment is entered by separate order.

SIGNED on August 5, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

10